JOHN L. ZEIGLER *vs.* FREDERICK SENTZNER.—*Dec.* 1836.

A court of equity has no jurisdiction over what is called "good will," and where a bill was filed upon a contract alleged to be of that description, claiming of the purchaser or party in possession, an account of rents and profits, arising from certain stalls in market houses in the City of Baltimore, the bill was dismissed, but under the circumstances of the case, without costs.

For the violation of such a contract, if the subject be one fit for a contract, the remedy is at law, where damages may be given by a jury.

APPEAL from the court of *Chancery.*

The bill was filed in this cause on the 21st February, 1834, by the appellee, and charged, that the father of the com-

plainant at the time of his death, and for a long time before was a butcher and victualler of the *City of Baltimore*, and that a long time previous to his death rented and obtained from the *Mayor and City Council of Baltimore* the use and occupation, and the right to use and occupy a certain stand in the Marsh or Centre market house, one in the Lexington and one in the Hanover market house, in the said city, for the purpose of vending meats. That he died possessed thereof, and all the rights and privileges attached thereto; that among other valuable rights and privileges of his father, in and to said stands, and growing out of his occupancy thereof, were the right of pre-emption, and the good will of his father therein. That his father died intestate— that administration was granted to his widow, who removed from *Maryland ;* that it is unknown, whether she is alive or dead ; that his father's debts are all paid ; that the adminis- tratrix in consideration of one hundred dollars, consented that the complainant should have the full benefit of said stands ; that upon the death of his father the right of pre- emption and good will descended upon complainant, and vested in him or in the administratrix for the use of the personal representatives of his father; that it was of great value ; that on the death of his father the complainant being an infant, his uncle was about to renew licenses for said stands, in the name and for the use of complainant, when a certain *John L. Zeigler*, a butcher and victualler, applied to the said administratrix and uncle, for permission to enter upon said stands as trustee for the use of complainant, and promised that if they would permit him so to do, that he would faithfully execute said trust and account for the rents and profits when complainant came of age ; that they con- sented, and defendant in consequence took possession of said stalls and held, used and rented them out for a long time, &c. that complainant is now of full age and defendant has refused to account with him. Prayer for an account and general relief, &c.

An order of publication was also prayed and granted, and publication made against the administratrix as an absent defendant.

The answer of *Zeigler*, the defendant, alleged that the renting of the stalls by the complainant's father was from year to year, every year being a new renting and requiring a new license ; that the father was indebted to him ; that he has not been paid, and the complainant had no right in the stalls until his father's debts were paid ; that the administratrix did not consent that complainant should have the stalls ; that the pretended right of pre-emption and good will did not descend as alleged, and particularly as the children of deceased were minors and unable to carry on the business of victuallers, that the renting is at the discretion of the *Mayor and City Council of Baltimore*, exercised through the *Mayor*, who refuses to renew when the rent is in arrear. The answer denied all solicitation, contract or agreement for the use and benefit of complainant touching the said stalls, and asserted that defendant acted on his own sole account, or that he made any profit from them.

A commission was issued and evidence taken, upon which an account was stated, and at March term, 1836, *Bland, Chancellor,* passed a final decree ordering the defendant to bring into court to be paid to the plaintiff the sum of $1,565, with interest from 11th March, 1836, and costs.

On the 12th May, 1836, the complainant filed a petition praying for a *fi. fa.* which the Chancellor ordered to issue. On the 16th, defendant prayed an appeal, and on the 17th he filed a petition (with an appeal bond,) stating his ignorance that a decree had passed in the cause, until the day before, and that the plaintiff before the defendant had received any notice or knowledge of the decree, had levied an execution on his real property, and that unless the execution was stayed or set a side, he could derive no benefit from his appeal, which he has prayed and secured by bond, the complainant being unable to respond to any decree of restitution, &c. in the event of a reversal. This petition the Chancellor dis-

missed: and on the 7th June, 1836, the defendant filed another petition, reiterating the grounds of his former petition, that the complainant was about to sell his property, and offering to pay the principal, interest, and costs of the decree into court upon condition that the execution should be stayed. This petition was supported by the affidavit of the defendant and one other person. Upon which the Chancellor passed the following order:

Ordered that all further proceedings under the said writ of *fi. fa.* be stayed pending the said appeal, unless otherwise ordered by the Court of Appeals on an application to be made to that court within the first ten days of the next ensuing term thereof on the Western Shore, *provided*, that the said petitioner forthwith bring into this court the said principal sum with the interest thereon and the costs, including the costs of the proceedings on the said writ of *fi. fa.* and upon this petition; to be deposited by the register in the *Farmers' Bank of Maryland*, as usual; and in case the further proceedings under the said writ of *fi. fa.* should not be suspended or stayed by the *Court of Appeals*, pending the said appeal, then the said money and costs so brought in under this order to be paid to the said plaintiff, otherwise to remain and abide the event of the said appeal—*provided*, that a copy of this order together with a copy of the aforegoing petition be served on the said plaintiff, and also on the said sheriff before the said sale on the 9th inst. This was done on the 8th June.

The cause came on to be heard before BUCHANAN, Ch. J. and STEPHEN, ARCHER, DORSEY, CHAMBERS, and SPENCE, Judges.

It was agreed by counsel, that the motion in relation to the *fi. fa.* under the Chancellor's order of the 7th June, and the general merits of the cause should be argued together.

MAYER, for the appellant, contended:
Upon the merits that the allegation of the bill as to any

20      v. 8

trust for the complainant is absolutely denied, and there was
no evidence to countervail the answer.    There was no proof
of profits derived ; and the evidence was contradictory as to the
value of the good will of the stalls.    The case if reduced to
one for mere specific performance by re-delivering the stalls
is defeated, for they have since been sold.    If put upon the
ground of express contract, a court of law is the proper forum
for the complainant.    There was his remedy.    The action
for money had and received would have given him full
redress.    A court of equity has not jurisdiction over a mere
good will right.    *Baxter vs. Connelly*, 1 *Jacob and Walk.*
556.    Over such a right as this, flowing from a municipal
corporation and dependent on the rotation of its officers, the
action must be at law.    *Bozen vs. Farlow*, 1 *Merr.* 459.

Upon the motion to stay execution, it was apparent that the
execution had been pursued with unparalleled speed.    The
defendant had no notice of the decree, until he saw his pro-
perty advertised for sale.    In that way he was informed of the
decree, and thus his right of appeal was virtually intercept-
ed.    Is this court obliged to order the money in court to be
paid to complainant, or the *fi. fa.* to proceed?    The *fi. fa.*
will not be ordered, for the money is here to answer all its
objects.    A sale is unnecessary in this case.    The object of
the law and the command of the writ are both gratified as the
fund is here.    It is then a question of equitable discretion
upon the whole cause, whether the court will part with the
fund.    It is within the case of *Thompson vs. McKim*, 6 *Har.
and John.* which shows the control of this court, over this
and similar cases.    The superior equity is to secure both
parties.    One in his property and the other in his right of
appeal.    The rule is, that to prevent a sale an appeal with-
out security shall not avail, but if this debt is fully secured
the court require no more, and here the money in court will
not be put in jeopardy until the final right is decided. _Willes
Rep._ 271.    There ought to be notice of a decree in Chancery
given before execution, 1785, ch. 72, sec. 25, 1818, ch. 193,
sec. 4.    A demand of the decree is dispensed with by the

latter act, is dispensed with on the ground of practice, but notice is not. The court are in full possession of the cause and now exercise a discretion regulated by the whole cause.

Speed, for the appellee, filed notes of his views.

T. P. Scott, for the appellee.

The object of the bill, is to obtain an account of rents and profits of certain victuallers' stalls in the market houses of Baltimore, and a specific performance by a re-delivery of them to the complainant, or payment equivalent to their value. These stalls become profitable from the known good conduct of their proprietors, and a custom has long prevailed of renewing the licenses for them to the same person, and upon his death, to his representatives. The custom has created a right, and the good will of a butcher's stall is a thing of profit according to the established reputation of the proprietor. The evidence establishes that the defendant entered into the contract charged, and that such contracts were usual. Then is a good will right the subject matter of contract? Are its incidental benefits the subject of sale? *Bunn vs. Guy*, 4 *East*, 190. Such contracts will be enforced. 2 *Bin.* 437. *Seaman vs. Price*, 9 *Serg. and Low.* 469. 7 *Cowen*, 307. *Simons vs. Stewart*, 1 *Cond. Ch. R.* 39. There were particular circumstances peculiar to the cases in 1 *Jacob and Walk.* 560, *and* 1 *Merrivale*, 459, cited on the other side, which reduced the courts to decline enforcing them, so far as they go to establish a general want of jurisdiction they are overruled by, 1 *Cond. Ch. R.* 39. The counsel here considered the evidence to show the value of the right in question. The question of jurisdiction as it was not excepted to is not open now under the act of 1832, ch. 302, sec. 5.

Upon the question of execution, no notice was necessary. It had been under the act of 1785, but this grew to be a grievance which was remedied by act of 1818, ch. 193. What necessity is there for a copy to be served on adversary,

if not for demanding compliance with the decree? And when the demand is dispensed with, why give notice to induce the defendant to appeal or make way with his effects. All the complainant had to do was to petition for a *fi. fa.* which he did. We had a right to be in haste, an old man thrust himself in between an infant complainant and his relations, and kept him out of valuable rights. The record teems with the defendant's frauds, and the appeal only follows out his original intentions.

When a *fi. fa.* has once been levied, a writ of error with bond will not stay it. *Beatty's Admrs. vs. Chapline*, 2 *Har. and John.* And as the Chancellor has left it to the discretion of this court, under this rule we demand an immediate order permitting us to proceed.

R. JOHNSON, for the appellant in reply, discussed the following questions:

1. Whether the complainant was entitled to relief upon the case made by his bill?

2. Whether if entitled upon the proof?

3. If entitled to any relief, is he so entitled to the extent awarded by the decree?

The case made by the bill is, that the ancestor of complainant at one period was possessed individually of a right in certain stalls in the Baltimore market houses. That he died intestate, leaving a widow and two children. The stalls are regularly rented for a pecuniary rent, and licensed for a license fee annually renewed. The charter of the city gave the power, and makes it the duty of the corporation to regulate the markets for the benefit of the community. The bill charges no usage which gives to the proprietor under this annual lease, the right of a renewal to the proprietor or his children. The usage charged is one merely to sell, as between the proprietor and the purchaser. The city may disavow this contract and not renew to the purchaser. I forbear to inquire whether any usage could be ingrafted to take from the *City of Baltimore*, the right to change the duty,

or to impose any obligation upon her officers to renew to the widow or first and second son of a deceased stall-renter. What then is the bill ?. The complainant seeks to enforce a contract as between defendant and himself, or others for him, by which he has been induced to part with a subject of property. It assumes but that for this, the complainant would have had an existing transferable right which the laws can notice.

At the death of the ancestor, he left no representative capable of doing the business of a victualler, to manage the stalls ; or competent to answer to the city for the rent and fees. At his death, if some other person had not sought the stalls, the corporation must have rented them to another butcher. Now the court sees the complainant can only claim by proof of usage of a right in the minor to renew in his own name, or in the name of a trustee for his benefit. For if he has no right which the law can notice, and the stalls reverted to the corporation at the expiration of the ancestor's annual license, and complainant had no right by no contract to relinquish could he be injured. There may be contracts in relation to good will, as where the vendor has the right, and contracts not to act in his trade founded on good consideration may be enforced, because injurious to the proprietor. All these contracts are founded upon a right which is surrendered ; an obvious, legal right, but there is no case conferring a right of action short of this.

Is there then on the bill and proof a case which equity can relieve ? The general rule is, that when there a remedy at law, there should be no interposition in Chancery. *Adair vs. Winchester,* 7 *Gill and John.* 114. *Dilly and Heckrotte vs. Barnard, ante.* The want of jurisdiction may be urged at final hearing. The act of 1832, does not interfere with that question nor the want of parties. The exceptions under that act are confined to the evidence, and the sufficiency of the averments of the complainant, provided the proof shows he had a cause of action. The point is open, can Chancery grant relief? There is no resemblance between the case,

1 *Cond. Ch. R.* 39, *and Jacob and Walk.* 556, *and* 1 *Merr.* 459. Whether a contract is valid at law or not, or whether damages be recoverable there, parties cannot be relieved in equity, if it is impracticable to execute an agreement specifically, as where lapse of time has rendered it impossible—and if there be an adequate remedy at law for violation of a contract, the result is the same. As to specific performance that cannot be decreed against this defendant, for at the end of every year the possession reverted to the city, and no decree could pass against her, nor was she bound by any usage. If there was such a contract the remedy must be at law. 1 *Gill and John.* 221. A defendant cannot be turned into a trustee for the sole purpose of conferring jurisdiction. 1 *Con. Ch. R.* 39. The counsel then proceeded to discuss the second and third propositions first stated by him, which relate exclusively to facts. The motion for suspending the execution he submitted on the argument of his colleague.

CHAMBERS, Judge, delivered the opinion of the court.

The bill in this case does not claim a specific performance of the contract charged. That is impossible, inasmuch as the defendant, now the appellant, has not and never had the title to the property or thing in relation to which, or to the rights attached to it, the contract is said to have been made.

It cannot be sustained as claiming an account for property belonging to an infant, upon which the appellant entered, thereby making himself liable as guardian, because the title to the property occupied never was in the complainant.

Fraud is not alleged in the bill, nor does it profess to be a bill for a disclosure. We have not been able to discover to which head of Chancery jurisdiction we are to refer for the authority to grant the relief claimed in this bill.

The argument for the appellee seems to assume, that there is something in the character of what is termed in the bill, " *good will*," to vest such jurisdiction in regard to a contract for the sale of it. In *Cruttwell vs. Lye,* 17 *Ves.* 335, good will is defined to be, " the probability that the old customers

will resort to the old place," and considering this to be what is intended here, we perceive nothing in its character requiring us to adopt such a doctrine upon principle. A careful examination of the cases referred to, and others, has not resulted in finding any decision, asserting that courts of equity will assume jurisdiction over contracts because they relate to good will. They countenance rather the contrary opinion. 1 *Chit. Gen. Prac.* 858, 859, and the cases there cited.

For the purpose of the argument we will concede the utmost, which the complainant, the appellee, here can claim, that good will is as much the proper subject of contract and sale as another vendible property—that the contract of sale is distinctly and sufficiently alleged in the bill and proved by the testimony ; yet we think this must be considered a bill claiming damages for the violation of a contract, the appropriate and ample redress for which is to be found in a court of law, at the hands of a jury.

With this view of the case it is unnecessary to enter into a minute examination of the facts as alleged, or to attempt a reconciliation of the testimony.

If a valid contract has been made, and can be established to entitle the appellee to recover for its violation, his remedy is at law, not in equity ; if no such contract can be established, he can have no ground of claim before either tribunal.

The decree in this case is accordingly to be reversed ; and the bill dismissed ; but under all the circumstances of the case without costs. The court will sign a decree accordingly ; and also an order directing the money deposited by the appellant to be repaid to him.

**DECREE REVERSED.**